IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN E. MILLER, | |
| Plaintiff, | |
| v. | C.A. No. 20-218-JLH |
| SGT. RONALD FREDERICK, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

John E. Miller, Smyrna, Delaware. *Pro Se*.

Nicholas D. Picollelli, Jr., Delaware Department of Justice, Wilmington, Delaware. Attorney for Defendants Sgt. Ronald Frederick and Lt. Ruth Dixon.

January 10, 2024
Wilmington, Delaware

*[signature]*

**JENNIFER L. HALL, U.S. DISTRICT JUDGE**

This is a prisoner civil rights case filed by *pro se* Plaintiff John Miller. Pending before the Court is the Motion for Summary Judgment filed by Defendants Sgt. Ronald Frederick and Lt. Ruth Dixon (D.I. 67). The motion is fully briefed. (D.I. 68, 69, 76, 79, 81, 82.) For the reasons stated below, the motion will be GRANTED. Plaintiff's request for relief under Federal Rule of Civil Procedure 56(d), (e) (D.I. 86) is DENIED.

**I.     BACKGROUND**

Plaintiff John Miller is an inmate in the custody of the Delaware Department of Correction. He is currently incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware. (D.I. 68, Ex. A at 10:22–11:2.[1])

On March 23, 2018, Plaintiff was working in "chow" serving food to inmates. (*Id.* at 12:4–7, 15:8–11; D.I. 68, Ex. B at 4.) Sgt. Ronald Frederick saw Plaintiff serve additional food to some inmates and he immediately terminated Plaintiff from his kitchen job. Sgt. Frederick also filed Disciplinary Report No. 1115646 against Plaintiff, which alleged that Sgt. Frederick observed Plaintiff serving "double portions of fish" to some inmates and that Plaintiff acknowledged serving extra fish to six different inmates. (D.I. 68, Ex. B at 4.) The Disciplinary Report charged Plaintiff with "Abuse of Privileges" and "Failing to Obey an Order." (*Id.*) No later than the following day, Plaintiff lost his single-cell privileges because he was no longer working in the kitchen, and he was moved out of his single cell. (*Id.*; D.I. 68, Ex. A at 24:5–23, 26:24–27:2.)

At his deposition in this case, Plaintiff testified about his belief that there was no rule against serving extra food and that Sgt. Frederick "fabricated" the rule in order to retaliate against Plaintiff because of his prior complaints about Officer Rash. (D.I. 68, Ex. A at 15:12–16:13,

---

[1] Exhibit A to D.I. 68 is the transcript of Plaintiff's deposition on August 29, 2022.

2

21:20–22:22.) Plaintiff submitted evidence suggesting that he previously complained about certain actions taken against him by Officer Rash in mid-to-late 2017.[2] (D.I. 82, Ex. E.) For his part, Sgt. Frederick submitted a declaration stating that he wrote the disciplinary report because he saw Plaintiff serving extra portions of fish to some inmates and because it was Sgt. Frederick's understanding that serving extra portions was a rule violation. (D.I. 68 Ex. B at 3 ¶ 11.) Sgt. Frederick also averred that he did not write the disciplinary report in retaliation or because Plaintiff submitted grievances about another officer. (*Id.* at 3 ¶¶ 9, 10.)

On March 29, 2018, Lt. Ruth Dixon conducted a disciplinary hearing regarding the Disciplinary Report. (*Id.*, Ex. C at 6.) During the hearing, Plaintiff told Lt. Dixon that he believed that she would find him guilty "no matter what" because she had a reputation of finding inmates guilty no matter what. (*Id.*, Ex. A at 21:2–7.) At the hearing, Plaintiff admitted that he served extra portions, and Lt. Dixon found Plaintiff guilty of the same rule violations as Sgt. Frederick. (*Id.*, Ex. C at 6.) Although the record is not entirely clear, it appears that Lt. Dixon ordered a "4 day LOAP [Loss of All Privileges]" as a sanction for the rule violations. (*Id.*)

At his deposition in this case, Plaintiff testified to his belief that Lt. Dixon found him guilty in retaliation for his statement that Lt. Dixon would find him guilty no matter what. (*Id.*, Ex. A at 21:8–16.) Lt. Dixon submitted a declaration stating that she found Plaintiff guilty of violating prison rules because he admitted that he gave out extra food at chow and that it was Lt. Dixon's understanding that giving out extra food at chow was a violation of prison rules. (*Id.*, Ex. C at 2

---

[2] Defendants point out that Plaintiff has not produced, and Defendants could not find, Plaintiff's grievance(s) against Officer Rash. (D.I. 68, Ex. D at 2–3.) However, Plaintiff submitted a contemporaneous affidavit describing a detailed timeline of events relating to Officer Rash. (D.I. 82, Ex. E.) For purposes of this opinion, I will assume that the evidence is sufficient for a reasonable jury to find that Plaintiff filed a grievance or took a similar constitutionally-protected act with respect to his complaints against Officer Rash.

¶ 9.)  Lt. Dixon also averred that she made her decision solely on the facts presented and her understanding that Plaintiff's conduct was a rule violation.  (*Id.* at 3 ¶¶ 10, 11.)

Plaintiff appealed Lt. Dixon's decision finding Plaintiff guilty.  The Warden reversed in a written decision, explaining that "[a]lthough I believe that I/M Miller was fully aware that serving extra food is not authorized, I also believe it is possible that some Lead Workers have given direction to serve the extra portions to building workers, this comes by my experience when supervising in the chow halls as well as my communication with current Lead Workers assigned to the same area stating this happens frequently."  (*Id.*, Ex. C at 8.)  The record reflects that, as a result of the appeal, the "4 day LOAP" sanction ordered by Lt. Dixon was "changed" to "zero days due to [the reversal] of the decision of the Hearing Officer."  (*Id.* at 6.)

On February 13, 2020, Plaintiff filed this action against Sgt. Frederick and Lt. Dixon under 42 U.S.C. § 1983.  (D.I. 1.)  The complaint alleged four theories: (1) Plaintiff's due process rights were violated; (2) Sgt. Frederick's March 23, 2018 disciplinary report was retaliation against Plaintiff for filing a grievance against Officer Rash; (3) Lt. Dixon's guilty finding at the March 29, 2018 disciplinary hearing was retaliation for Plaintiff telling Lt. Dixon that she would find him guilty no matter what; and (4) Lt. Dixon retaliated against Plaintiff in a separate incident on June 20, 2019.  (*Id.*)

Defendants moved to dismiss the complaint.  On March 28, 2022, Judge Stark dismissed the due process claim and the retaliation claim against Lt. Dixon based on the June 20, 2019 incident. But he denied the motion as to the retaliation claim against Sgt. Frederick based on the March 23, 2018 incident and the retaliation claim against Lt. Dixon based on the March 29, 2018 incident.  (D.I. 24.)

4

On May 16, 2022, the case was reassigned to me. I entered a scheduling order setting a September 6, 2022 deadline for discovery, but I twice granted Plaintiff's requests to extend that deadline. (D.I. 48, 59.) On March 6, 2023, Defendants filed the pending Motion for Summary Judgment. (D.I. 67.) The Court twice granted Plaintiff's requests for an extension of time to respond, and the Court denied Defendants' Motion to strike Plaintiff's Answering Brief.[3] (D.I. 72, 75, 84.)

## II.   LEGAL STANDARDS

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)). A factual dispute is only genuine if "the evidence is such that a

---

[3] The Court treats Plaintiff's May 11, 2023 filing at D.I. 82 as Plaintiff's Answering Brief. (*See* D.I. 84 ¶ 8 ("Given the circumstances here—the *pro se* prisoner Plaintiff filed an incomplete brief without knowledge that the deadline was extended, then filed a supplement, then timely filed a consolidated answering brief that does not appear to contain any new material—the Court is not inclined to strike Plaintiff's May 11, 2023 Answering Brief (D.I. 82).").)

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

### III. DISCUSSION

To establish illegal retaliation for engaging in protected conduct, a prisoner plaintiff must prove that "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If a plaintiff establishes a prima facie case, then the defendants "may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).

### A. Sgt. Frederick

Plaintiff asserts a retaliation claim against Sgt. Frederick, claiming that Frederick retaliated against Plaintiff for his prior complaints against Officer Rash. (D.I. 1 at 5.) Sgt. Frederick argues that Plaintiff fails to identify sufficient evidence to enable a reasonable jury to find that Plaintiff's complaints about Officer Rash were a factor in Sgt. Frederick's treatment of Plaintiff.

According to the Third Circuit, the third element of the retaliation prima facie case can be established with evidence of either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834 F.3d at 424. Regarding the first option, "an unusually suggestive temporal proximity" exists where the temporal gap between the events "is on the order of days or weeks." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 134 (3d Cir. 2017) (citations omitted). Under the second option, "the appropriate test is 'timing plus other evidence.'" *Watson*, 834 F.3d at 424 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Plaintiff has not provided sufficient evidence to enable a reasonable jury to find that his complaints about Officer Rash were a substantial or motivating factor in Sgt. Frederick's treatment of Plaintiff. There is no unusually suggestive temporal proximity here because the protected activity—Plaintiff's grievances about Officer Rash—were filed in May and June of 2017, and the hearings on those grievances occurred in November 2017. (D.I. 82, Ex. E at 1–4.) The alleged retaliatory actions here—Plaintiff's March 23, 2018 firing from his chow job (which resulted in Plaintiff losing his single cell) and the charges in the March 23, 2018 Disciplinary Report—did not occur until many months later. *Rink*, 717 F. App'x at 134; *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (reasoning that a two-and-a-half-month gap was not unusually suggestive).

7

Plaintiff also fails to identify sufficient evidence in the record for a reasonable jury to find causation under the second option. As an initial matter, "courts have consistently rejected retaliation claims against one defendant based on protected activity against another individual for lack of retaliatory motive." *Robinson v. Bureau of Health Care Servs.*, No. 20-1796, 2021 WL 4306116, at *5 (M.D. Pa. Sept. 22, 2021) (cleaned up) (quoting *Murray v. Smithbower*, No. 17-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *2 (3d Cir. Apr. 4, 2023) (explaining that the mere fact that a plaintiff filed grievances against other prison employees is insufficient to preclude summary judgment on causation).

Here, as Plaintiff admits, there is no evidence in the record that Officer Rash was involved in the March 2018 incidents. (D.I. 68, Ex. A at 21:24–22:2.) The only possible support in the record suggesting that Plaintiff's 2017 complaints about Officer Rash motivated Sgt. Frederick's March 2018 actions is Plaintiff's assertion that, on June 20, 2019, Lt. Dixon told Plaintiff that Sgt. Frederick wrote Plaintiff up because Officer Rash couldn't do it himself. (D.I. 68, Ex. A at 22:4–22, 36:6–12; D.I. 1 at 6; D.I. 82, Ex. F.) Lt. Dixon disputes that assertion. (D.I. 68, Ex. C at 3 ¶ 11.) A prisoner's uncorroborated assertion that a single well-after-the-fact statement by one officer suggesting that a second officer made an earlier decision based on a prisoner's even earlier complaints about a third officer—where no other evidence suggests the events are related—is insufficient evidence for a reasonable jury to find a pattern of antagonism suggesting a causal link.

In sum, Plaintiff has failed to identify evidence that would allow a reasonable jury to find that Plaintiff's complaints about Officer Rash were a substantial or motivating factor in Sgt. Frederick's decision to discipline Plaintiff. The Court will grant summary judgment to Sgt. Frederick on Plaintiff's retaliation claim.

### B. Lt. Dixon

Plaintiff's remaining claim is a retaliation claim against Lt. Ruth Dixon. Plaintiff alleges that Lt. Dixon retaliated against him by unlawfully punishing Plaintiff based on his speech. (D.I. 1 at 5–6.) Specifically, Plaintiff asserts that prior to the disciplinary hearing conducted by Lt. Dixon, Plaintiff told Lt. Dixon that she would find him guilty because she had a reputation for finding inmates guilty "no matter what." (D.I. 68, Ex. A at 21:1–4.) Plaintiff alleges that Lt. Dixon then found him guilty and told him she did so because Plaintiff said that she would. (*Id.* at 21:4–16.) Lt. Dixon argues that Plaintiff's evidence is insufficient to establish any of the elements of a prima facie case of retaliation.

I agree with Lt. Dixon that Plaintiff's evidence does not establish a prima facie case. As an initial matter, I'm skeptical that what Plaintiff says happened—he told a hearing officer that she had a reputation for finding inmates guilty five minutes before she found Plaintiff guilty—is at all suggestive of unlawful retaliation. Even putting that aside, I agree with Lt. Dixon that Plaintiff's evidence is insufficient to show that he suffered an adverse action at the hands of Lt. Dixon.

Lt. Dixon's decision finding Plaintiff guilty was reversed on appeal and the sanctions removed, but Plaintiff claims that he nevertheless suffered three adverse consequences: he lost (1) his chow job, (2) his single cell, and (3) his good time credits. But as Plaintiff admits, and the record confirms, Plaintiff lost his chow job and his single cell because Sgt. Frederick fired him from the chow job on March 23, 2018. (D.I. 68, Ex. A at 24:5–23; Ex. B at 4.) Because Plaintiff had already lost his job and single cell by the time of Lt. Dixon's March 29 disciplinary hearing, those consequences cannot be attributed to Lt. Dixon.

That leaves only the alleged loss of Plaintiff's good time credits. But Plaintiff has failed to provide evidence that he lost anything or that any such loss is attributable to Lt. Dixon. At his

9

deposition, Plaintiff testified that he did not lose good time credits at all but instead was briefly prevented from earning good time credits during the time he lacked a prison job after he was fired by Lt. Frederick. (D.I. 68, Ex. A at 23:9–10 ("And I suffered not earning that good time for that period of time . . . ."), 37:17–19 ("Well, you get good time for working. If you're not working, you don't get that good time.").) And later in the deposition, Plaintiff conceded that he was not aware of how many good time credits he had before the incident or whether he had lost any. (*Id.* at 38:6–14.) Plaintiff submitted two Delaware Department of Correction Quarterly Good Time Reports, but those reports do not show that he lost or ceased earning any good time credits. (D.I. 82, Ex. C.)

In short, there is no evidence to suggest that Plaintiff lost any good time credits. Although Plaintiff testified that he was prevented from earning additional credits for a period because he lacked a prison job, there is no evidence in the record to suggest that Lt. Dixon was involved in Plaintiff losing his job.

In sum, Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether he suffered an adverse action at the hands of Lt. Dixon. The Court will grant summary judgment to Lt. Dixon on Plaintiff's retaliation claim.

## IV. PLAINTIFF'S REQUEST FOR RELIEF UNDER RULE 56(d), (e)

After the completion of the briefing on Defendants' summary judgment motion, Plaintiff filed a motion styled as a "Petition For The Court To Exercise Discretion/Mercy Under Rule 56(d) And Rule 56(e) And Permit The Plaintiff To Address Any Shortcomings Of The Plaintiff's Response Brief." (D.I. 86.) Plaintiff seeks "the opportunity to properly address any facts that were unavailable or not properly supported." (*Id.* at 2.)

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Petitioner must specify "what particular information [] is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Shelton v. Bledsoe*, 775 F.3d 554, 565–66 (3d Cir. 2015) (quoting *Dowling v. Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)).

Plaintiff's submission does not meet the Rule 56(d) standard. For one thing, Plaintiff has not filed an affidavit or declaration as required by the rule, and his motion can and should be denied for that reason alone. But even if the Court considered Plaintiff's arguments on the merits, the Court would still deny his request for relief under Rule 56(d). Of the three arguments in Plaintiff's motion, two do not identify facts that Plaintiff was unable to present; they instead present Plaintiff's view as to how certain evidence already in the record should be viewed. (D.I. 86 at 1–2.) Plaintiff's remaining argument, generously construed, appears to request the version of Bureau of Prisons Policy 2.2 governing inmate jobs that applied in March 2018. (*Id.* at 1.) But Plaintiff fails to explain how that document is essential to its opposition to Defendants' summary judgment motion, and the Court agrees with Defendants that it is not.

Rule 56(e) says that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Because Plaintiff has had a sufficient opportunity to conduct discovery

11

and does not identify any material fact that he was unable to address, the Court declines to grant Plaintiff a further opportunity under Rule 56(e)(1). The remainder of Rule 56(e) merely restates the rule that "the opposing party must properly support its assertions of fact or summary judgment, if appropriate, will be entered against him." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2719 (4th ed. 2023). The Court applied this rule in determining that Defendants are entitled to summary judgment.

Plaintiff's "Petition For The Court To Exercise Discretion/Mercy Under Rule 56(d) And Rule 56(e) And Permit The Plaintiff To Address Any Shortcomings Of The Plaintiff's Response Brief" (D.I. 86) is DENIED.

## V.     CONCLUSION

For the reasons set forth above, Defendants are entitled to summary judgment on all claims. An appropriate order will follow.